hearing by Zoom this morning, participating in argument and just want to let you know that in the event we have any technical difficulties, if we can't see or hear him, we have our wonderful IT staff here and they'll take care of the problem. So please be patient and we'll make sure that you can go on with your argument as soon as possible. I know many of you are familiar with our timing system, but for those of you who are not, you'll see lights by the timing clock. When the light turns yellow, that means you have two minutes remaining in your argument. And when the light turns red, we ask you to quickly conclude your remarks. But if you're answering a question from the court and the light is red, you may continue to answer the question. Please be advised that we have studied your cases. We're very familiar with them. So feel free to go right to the heart of your arguments. At this time, I will call the first case, which is number 20-13218, United States v. Patrick Ifediba. Am I pronouncing that correctly? For the appellant, we have Mr. Kinsleth. You may begin when you're ready, sir. Please, court. Dennis Nisely for Patrick Ifediba. Dr. Ifediba has four issues to present to the court. One is the trial court abusing the discretion for failing to either grant a motion for mistrial or conduct a more extensive board-hour examination after discovery of confrontation, Fifth and Sixth Amendment violations in relation to not being allowed to present a complete defense related to some good patient evidence. Thirdly, is a Rule 29 judgment of acquittal as to four counts, two, five, six, and eleven, that the government failed to prove a prima facie case. And lastly, is a sentencing issue as to quantity, as to the base offense level for sentencing purposes. As to the first issue of the trial court abusing its discretion in not granting a motion for a mistrial or conduct a more extensive board-hour examination of a juror after the revelation of a juror misconduct, as the court knows from looking at the briefing, that in this case, a juror was seated and a person sent an email to the clerk, to the judge's office saying that the juror had been discussing the case at work, it was a co-worker, and that the person had conducted some internet searches about the case itself. The court called the juror in and the juror denied having any outside influence whatsoever or discussing the case outside, the case, the juror was seated. Let me ask you for clarification. Yes. Mr. Kinslow. So, as I understand what happened, defense counsel was permitted to suggest any questions for the accused juror. And so, am I right that you're not complaining about any defect in that aspect of the investigation, the questioning of that juror? Of the accused juror, no ma'am. Okay. And then, so what you, what you're challenging is the district court's decision to vore dire the entire jury, or to not vore dire the entire jury. Is that right? To not vore dire the entire jury individually. Individually. Individually. Okay. Because the district court did do it collectively. Did it collectively, but what they did collectively was only a, basically reinforced the initial admonition to the jury about not taking any information outside the courtroom. If you look at the quotation that's cited in the brief, I think by both the government and the defendant, the court reemphasizes burden of proof and presumption of innocence and says that, you know, your duty is to not have any information outside of the courtroom. And can you do that? Can you, can you tell me you will do that? Please stand up. And they all stood up. The court did not go back and say, now, has anyone gotten any information or received any information up until this time outside the courtroom? The counsel. Yes. The counsel. You didn't, you didn't ask the court to do that. Judge, I, I was not trial counsel, but the trial counsel did not ask. Right. When I, when I say you, I'm talking about the defense. The defense at trial did not request that. So the judge didn't issue any ruling on that, that you have any standing to complain about. But the trial counsel did ask for individual vore dire. And, and the court replied to him. But that's not, that's not what you're talking about. Now you're talking about the limitations on the vore dire that was of the entire group. You said the judge didn't ask the entire group. You didn't ask the judge to ask the entire group about whether they had received any information. That is correct, Judge. It was a general inquiry, I suggest by counsel for the defendant, a general inquiry to inquire further into whether or not there was any juror, whether the juror misconduct had affected any other jurors. The court's effort to do that was the inquiry I described. And you're, your Honor is correct that defense counsel did not object at that point to what the jury, what the court said to the jury collectively. But the underlying objection. Counsel, it was, it was more than did not object. Defense counsel didn't suggest that the judge asked that. Had an opportunity to suggest any other questions and didn't suggest that. I think that's what the record reflects, Judge. You're correct. That is what the record reflects. But again, I think they did ask for individual vore dire, which was a request that the court refused. And, and when, when the individual vore dire was requested, the district court told defense counsel, what about your proposal of individual vore dire makes it more likely that a juror fesses up than the idea that I tell them all that you can confide in the courtroom, you can confide in the courtroom. Deputy Keisha, if you're aware of something, I actually think this is a better, this will probably lead to more information because Keisha has a relationship with each one of them. We're putting them on the spot individually in your proposal. I think mine, my proposal actually gets to the truth better. How would you respond to what the judge said to defense counsel? I would respectfully disagree with the court's approach in that regard, in that jurors, I think, and the court's experience may be, and my experience has been, that you have a collective jurors and nobody wants to raise their hand. If you're, if you're by yourself and in there and, and not feel pressured by the court or intimidated by the court, but you're, you're there and no one else, the juror that you may have been next to that told you, you know, that this lady told me about the internet search, she's not sitting right there next to you and y'all said, don't say anything to the judge about it. But how, how is it an abuse of discretion? Well, I mean, I know you disagree, but how is it an abuse of the judge's discretion? Well, I think what you look at, Judge, under the Brantley case, you look at one, did the, did the offense take place, did, did juror misconduct take place? And I think in this case unquestionably it did. Then Brantley says, well, if it did, what is the seriousness of the, of the misconduct? And dependent upon the seriousness of the misconduct, how much investigation do you need to do so it won't be an abuse of your discretion? So what we have here is clear, and the judge even said this was a credible tip, a credible tip because the person that sent the, the email that said the juror was talking about the case at work and doing internet searching, that, that person that sent the email said it had information the court said that only could have been gathered from someone who was actually attending the trial. Counsel, counsel, nobody is, nobody is disputing the credibility of the report that the, the juror who was removed, the alternate juror who was removed was talking about the case out of the courtroom. I mean, that was taken as given. The judge never questioned that even though she denied it. But the, the problem you have is you're saying that the, that the shortcoming of collective questioning is nobody wants to stand up with their co-juror sitting beside them and accuse that co-juror of any misconduct. Therefore, it should have been one-on-one. But that, that's not really true to the record. The record shows that what the judge said is, if any of you have anything to report about that or know anything about that, I want you to feel free to confide in the courtroom deputy hereafter. And no one did. The reason that's particularly telling is there were at least three instances in this record in which a juror went up to the courtroom deputy and said, oh, by the way, I know this and I'm afraid that that might be a problem. Could you tell the judge basically? And on one instance, I realize now that that location is one near where I was and so forth and so on. So we had had instances in which the jurors felt free to confide in the courtroom deputy and that's what Judge Proctor suggested they do here, was it not? Judge, they did, but a close reading of Judge Proctor's collective admonition to the jury, I respectfully suggest, talks about more future problematic information rather than what you may have heard. He did not, there was no part of that admonition saying, if you have heard something before this time, it's saying, you know, you have a duty to do this and if it happens, please come forward. And I think that's a fair reading of the collective instruction that Judge Pryor gave and also to make him to the point that the court has inquired about when you have a seriousness of an offense of this nature, and it is serious, that we've got internet information that could be talking about media coverage, it could be talking about opinions. But you're forgetting, you're omitting the fact that the tip was that one of the alternate had no evidence that the misbehaving alternate had shared outside information about the case with any of the other jurors. And we can't find that evidence unless we have a thorough examination and as Brantley says, when you have a serious, dependent upon the seriousness of, dependent upon the seriousness is of the alleged misconduct or in this place demonstrated misconduct, the duty of the court rises to make a more thorough investigation. And I suggest and the reason I make the analogy to whatever the internet conduct may have been or the other information may have been gathered, it could have been quite serious. But the tip was this was isolated to the one juror. Yes, ma'am. That's the record we have. And there's no question about that. The danger to the defendant and the danger is that the one juror who had the tip poisoned the rest of the jurors by saying something, yeah, I know the opioid problems are so rampant that we've got to stop these doctors from doing A, B, C and D or whatever it might be. And that's speculation, of course, not on the record. But the issue is once you know you have a serious tainting of the jury by a juror and then you have, you need to make sure that the individual and other jurors are not poisoned and because of the seriousness of the first, the seriousness of the undisputed misconduct or juror misconduct was such that the only remedy that can fairly assure that the rest of this jury is not some generalized, you know, you've got the burden of proof in this case and if you hear anything later, let me know, the way to do it, I respectfully suggest, would have been to have them conduct the individual vore dire. Even if we agree with you that the district court should have conducted vore dire on the entire jury, to obtain the relief you seek, you still have to show that Mr. Effediba did not receive a fair trial, don't you? Yes, Judge. And how do you meet that burden? You can't get there until you determine what the degree of the, I use the word poisoning, or the effect on the rest of the jurors may have been. Without the vore dire, you can't even get to the prejudice issue to determine what the prejudice could have been. Because as of right now, if it's only, if this was limited to one juror, you're not going to be able to meet that burden. The juror was an alternate and dismissed and so we, you know, the... So without information about any other juror, you don't meet that burden? There is no way without other information, but that's why the duty exists for the court to inquire further in these situations. Thank you. You've reserved your two minutes for rebuttal. Mr. Robbins. May it please the court, good morning, your honors. John Robbins on behalf of Justina Osolobo-Nagassi. I've only reserved or kept one minute of the allotment to defer to my friend, Mr. Knisely. The basis of our appeal is that the evidence was insufficient to support for a reasonable juror to find my client guilty. We highlight very, the record is very clear, what's been submitted. She worked at this clinic for approximately 10 months of this alleged conspiracy. She did no more than any of the other employees. What about the evidence at trial? There was testimony from her co-worker, Ms. Talbert, who testified that when she told Ms. Osolobo-Nagassi about her concerns about over-prescribing allergy treatments, she told Ms. Talbert, you just need to do what you got to do. You need to do your job and do what Dr. Patrick asked you to do. Isn't this circumstantial evidence that she both knew about the insurance scam going on at the allergy practice and was participating in it by instructing Ms. Talbert not to rock the boat? She worked just as Ms. Talbert did at the direction of Dr. Afedova, which was her older brother. She worked and followed his direction, just as Ms. Talbert did, just as Ms. Talbert falsified records, just as Ms. Talbert lied about what she did initially, just like Ms. Carpenter, who was an employee. Ms. Osolobo-Nagassi did no more, and we spent the record, no more or no less than any of the other employees in this case, and she left in June of 2014, and the conspiracy to commit health fraud continued on. Thank you. Thank you. Ms. Atwood? May it please the court, Melissa Atwood for the United States. Unless the court has a different preference, I will begin with Ms. Osolobo's sufficiency of the evidence argument, and then transition to the jury question, the question of potentially contaminated juror, and I'm happy to answer any other questions that the court may have. With respect to Osolobo, she documented therapies that, for patients that she knew did not have the condition. She didn't just make an entry that something was, that an injection was given, and on several occasions she hand wrote in little comments on the sheet in the record, the medical record, that the person was reporting improvement after beginning allergy therapy, when she had actually administered a test that showed they didn't even have allergies. The, she participated in making sure all of these people had been pre-screened so that they knew that they would get paid for these. She in fact did lie. She, when the FBI went and spoke to her on the day of the search warrant, they asked her about, what do you do when folks test negative, she said, well we don't order therapy for them, and then they began to show her records, and she had no explanation for that. And then the situation with Ms. Holbert really did sort of solidify the fact that it was, she wasn't, let's be clear, she wasn't just another employee. She had been the clinic manager before Dr. Efetiba inserted her into the allergy side of the house. So, for her to tell Ms. Holbert to be quiet and do her job was significant. The issue concerning the contaminated juror, your honors have already made several of the points that I was, that I had planned to make. Well, let me see if I can, if I can cut to the chase here. Yes, ma'am. And of course, I'm not, I don't speak for the rest of the court, just myself, but once the juror lied upon being questioned about having discussed the case with anyone or done any outside investigation, wasn't the court required to do more when it had reliable information that she had in fact done those things? Your honor, with respect to her, it had already done the most it could do. She was the only one that there was any evidence had had any outside influence or even any allegation that there had been an outside influence, which would be the Googling. And with respect to that juror, the court actually dismissed her before it even began the individual voir dire. So, there was not anything further to do with respect to her. With respect to the rest of the panel, the, what the court would have had to have, what not only that she talked to the rest of the panel, but that she talked to the rest of the panel about what she had found out online. And that was, while that could have been something the court could have concluded, potentially, we don't believe that the current record is such to indicate that that did happen. Once the juror had been dismissed, it would have been, and then was questioned, it would have been very easy for defense counsel to, or for the court to press her on, you say there was no conversation, but, you know, we've heard there may have been. It didn't pursue any of that. It just, and no request was made even though a specific opportunity was given to follow up with her. So, then the court was left with a defendant who immediately moved for mistrial, and when the court said, I'll consider something short of that, that's how we got to the collective voir dire. Your Honors, the case that the defendant, that Mr. Knisley cited, Brantley, it is cited in his brief. In that case, the judge did, based on my reading of that case, the judge did no investigation of the remaining jurors. There wasn't. It wasn't like there was collective investigation or collective inquiry that was then ineffectual or that the Eleventh Circuit didn't like. It was that they just, she just went with what the supposedly offending juror had said, and the trial judge went with what the possibly offending juror had said, and that was it. And that was sent back for a more thorough investigation. But in this case, Document 163 is, in the PACER record, is the email. It's quite short. It's a paragraph long, so, and it mentions nothing about how much the lady was talking at work on the 5th of July. That's how this even happened mid-trial that she went to work. The court gave the jury the day after the 4th off and then did some hearing work with the lawyers. And during that time, she apparently went to work. There's no allegations she spoke to anyone else. And as Judge Carnes mentioned, this particular jury had already shown itself willing to confide in the courtroom deputy and ask if it thought that it had done, may have even come close to violating a court rule. The problem with the point that Judge Carnes made is this, and that is that they had confided in the courtroom deputy about things that concerned them without having been in open court and basically not mentioned them when asked to do so. So in other words, the court questioned the jury as a whole, and they all indicated that there wasn't a problem, which is different from sensing that there might be a problem and you hadn't in open court indicated to the court that there wasn't a problem. Your Honor, I apologize. You see what I'm talking about? Yes, Your Honor, I do. I would just, the way that I, a reading of what Judge Proctor said and what happened, he went back and, as Your Honors have all seen, it's quoted in the briefs, he went back and said, we're at the midpoint of the case, refresh there about not talking or deliberating. And then he said, I expect, does everyone understand my instruction? I'm going to ask you to reconfirm that. I expect if there's a problem or that you have awareness of the problem that you will let the court clerk know immediately. Do you understand that if you're willing to follow this instruction, stand up? So he did not actually say, he didn't, by standing up, they were not answering a question of we are not aware of anything at the current moment. My understanding of the way I read the records, Your Honor, is that what they were saying was we understand this is our duty, this is our obligation, and if we know of anything, we're to tell the courtroom deputy. Well, the question then is what the jurors, and particularly one who knew about a problem, how it interpreted the word following. If there's a problem with any juror following this instruction, does it mean obeying this instruction or after the time I give this instruction? That's the problem with the, that's the ambiguity in the judge's instruction. Your Honor, I understand that concern and, but as read in total, in read together, the, when he says, if there's a problem with anyone following this instruction, then it, then it is saying, as I, as a plain reading of that, if there's a problem with anyone obeying this instruction, because this instruction is the object of that verb, if I'm remembering my English grammar correctly, and, or gerund, and so there, it is in the overall context because the court starts with, look, this has been the ground rules since the beginning. I told you at the beginning these were the rules. We've talked about this periodically. I'm reminding you of that. If you know of a problem, let us know through Keisha. Through the totality of that instruction, it was clear to the jury that he was talking about the entirety of the, the entirety of the case and not just the remaining few days. Unless the court has any other questions with regard to the other issues, we will rest on our briefs. Thank you, Ms. Adwood. Thank you. Thank you. Mr. Kinslev, you have two minutes for your rebuttal. I believe Judge Starnes has touched upon the issue in the case, in the collective instruction. What is the interpretation of will you follow? I think the reasonable interpretation of will you follow is will you, in the future, follow the court's admonition about two things. One, you're to decide the case totally on the evidence you hear in the case and you're not to do any outside, not to get any outside information. Going back to, which I think the court is focused on, what the real concern is, is the content of the collective admonition and was it effective enough to ensure that the information from the offending juror did not get to the other jurors. The court could have done it possibly collectively if the court would have been clearer in that instruction and said, you know, I want you to, I'm going to repeat my instruction to you. Can you follow in the future? Maybe a little unclear. If it said, you know, has anybody heard anything from anyone else about what happened outside, about anything, any other information they may have gotten from outside the courtroom about this case? That wasn't done. And with the lack of clarity of the collective instruction, that is where the court abused its discretion in not going to having the individual voir dire or at the very minimum a much more clear collective. But I suggest the individual voir dire is the way to do it. When you want, when you ask the entire jury, stand up if you agree, you know, the chances of one sitting down and saying, I'm not going to agree, it's just not realistic. The way to get to the real inquiry because of the seriousness of the allegation is to have a one-on-one individual voir dire. Counsel, let me, counsel, help me with one point. I know the email to the juror, a jury misadministrator talking about the problematic juror said that things that she talked to her co-workers about and then said she also said that she immediately Googled the case, despite the judge telling everyone not to. Is there any evidence or indication that she found out anything about the case that she hadn't already heard in the courtroom when she Googled it? No, sir, there is not. As you might know, the evidence would have had to come from the offending juror and the offending juror denied any allegations. So that all the more reason to go to the other jurors to maybe that inquiry could be answered in that respect. Thank you, counsel. We have your case. Our next case is number 21.